Hunter J. Shkolnik (NY SBN 2031458, CA Pro Hoc Vice Status Pending)
HShkolnik@Napolibern.com
Marissa C. Langhoff  (CA SBN 272692)
MLanghoff@napolibern.com
NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES LLP
111 Corporate Drive, Suite 225
Ladera Ranch, CA 92694
Telephone: (949) 234-6032
Facsimile:   (949) 429-0892

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NIKOLE M. GROVE, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>ORGANON USA, INC.; ORGANON PHARMACEUTICAL USA, INC.; ORGANON INTERNATIONAL, INC., ORGANON BIOSCIENCES NV; AKZO NOBEL NV; SCHERING-PLOUGH CORPORATION, MERCK & COMPANY, INC., MCKESSON CORPORATION and DOES 1-100.<br>　　　　　　　　Defendants. | Case No. 13-cv-02138 (SC)<br><br>PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND CASE TO STATE COURT<br><br>Date:  July 19, 2013<br>Time: 10:00 a.m.<br>Judge: Hon. Samuel Conti<br>Court: Courtroom 1 – 17th Floor<br><br>[Filed Concurrently with Declaration of Marissa C. Langhoff and Attached Exhibits] |

**TABLE OF CONTENTS**

I.  INTRODUCTION..................................................................................................................1

II. REPLY ARGUMENT..........................................................................................................2

    A.  Plaintiff's Remand Motion Should Not Be Deferred............................................2

    B.  Defendants Removal Was Procedurally Improper................................................3

    C.  Defendant McKesson was not Fraudulently joined..............................................4

        i.  Plaintiffs Allege Sufficient Facts Against McKesson to Provide an Adequate Basis for McKesson's Alleged Liability............................................4

        ii. Plaintiffs' Claims Against McKesson Are Proper and Consistent with Their Claims Against the Merck Defendants. ..........................................................7

        iii. Plaintiffs' Claims Against McKesson Are Sufficient Under California Law.....8

        iv. Merck Has Failed to Show that Plaintiffs' Claims Against McKesson Are Preempted.........................................................................................................9

    D.  The Delaware Plaintiff Was Properly Joined and Defendants' Request to Sever Should Be Denied and All Claims Remanded Back to State Court Together................................13

III. CONCLUSION..................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 994-95, (Cal.1991) . . . . . . . . 10,14

*Andrews v. Bayer Corp.*, 2010 WL 234808, at *4 (C.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . 5,6

*Andrews v. Bayer Corporation,* 2010 WL 234808, at *3 (C.D. Cali. Jan. 12, 2010) . . . . . . . . . 14

*Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 762-63 (S.D. W.Va. 2003) . . . . . . . . . . . . . . . . . 9

*Bird v. Carteret Mortgage Corp.*,
   2007 U.S. Dist. LEXIS 471 (S.D. Ohio Jan. 5, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Canales v. Organon USA, Inc.*,
   Case No. 13-00078 JM(BLM)(S.D. Calif. March 11, 2013) . . . . . . . . . . . . . . . . . . . . passim

*Carlin v. Superior Court*, 13 Cal. 4th 1104 (Cal.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cavallini v. State Farm Mut. Auto Ins.* Co., 44 F.3d 256, 259 (5th Cir. 1995) . . . . . . . . . . . . . 17

*Cleo Flauta v. Johnson & Johnson,*
   *Case* No. CV 12-9095 PSG, slip op., at 5 (C.D. Cal. Jan. 10, 2013) . . . . . . . . . . . . . . . . . . 18

*Doe v. Allied –Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 62 (Cal. 1963) . . . . . . . . . . . . . . . . . 14

*Halperin v. Merck, Sharpe & Dohme Corp. and H.D. Smith Wholesale Drug Co.*,
   2012 WL 1204728, at *3 (N.D. Ill. April 10, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*In re Baycol Prods. Litig.*, No. MDL 1431 (MJD),
   02-4835, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) . . . . . . . . . . . . . . . . . . . . . . 9

*In re Fosamax Prods. Liab. Litig.*, 2012 WL 1118780 (D.N.J. April 3, 2012) . . . . . . . . . . . . . 18

*In re Fosamax Prods. Liab. Litig.*, MDL No. 2243, 2012 WL 181411, *3-4 (D.N.J.
   Jan. 17, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re PPA*, MDL No. 1407, 2002 WL 34418423, at *3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Rezulin Prods. Liab. Litig.*, 133 F. Supp.2d at 290 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Rezulin Prods. Liab. Litig.*, MDL No. 1348,. Case No. 02-Civ. 3583, 2003, Dist.
   LEXIS 28, at *1-*2 (S.D.N.Y. Jan. 6, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Yasmin & YAZ (Drospirenone) Mktg, Sales Practices and Products Liability*

*Litig*. 779 F. Supp. 2d 846 (S.D. Ill. 20s10). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In Re Yasmin and Yas (Drospirenone) Marketing, Sales Practices and Products*

    *Liability Litigation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re: Avandia Sales Practices and Products Liability Litigation*, 624 F. Supp. 2d

    396, 418-419 (E.D. Pa. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Louis v. Wyeth-Ayerst Pharm., Inc.*, No 5:00 CV102LN, 2000 U.S. Dist. LEXIS

    22694, at 6* (S.D. Miss. Sep. 25, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Maher v. Novartis*, 2007 U.S. Dist. LEXIS 58984 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Maness v. Bayer Corp*. 2010 U.S. Dist. LEXIS 50076 . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Marble v. Organon*, 2012 WL 2237271 (N.D. Cal. June 15, 2012) . . . . . . . . . . . . . . . . passim

*Marble v. Organon*, No. C 12-02213 WHA, 2012 WL 2237271

    (N.D. Cal. June 15, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,4

*Martin v. Merck & Company, Inc*. 2005 WL 1984483 (E.D. Cal. 2005) . . . . . . . . . . . . . . . . 4

*McKell v. Washington Mut., Inc.*, 49 Cal. Rptr. 3d 227, 238 (Ct. App. 2006) . . . . . . . . . . . 5,6,8

*Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) . . . . . . . . . . . . . . . . . 4

*Osborne v. Metro.Life Ins. Co.*, 341 F.Supp.2d 1123, 1128 (E.D. Cal. 2004) . . . . . . . . . . 2, 17

*Pliva, Inc. v. Mensing*, 131 S. Ct. 2567, 2573 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Plute v. Roadway Package System, Inc.,* 141 F.Supp.2d 1005, 1008 (N.D. Cal. 2001) . . . . . . 4, 16

*Sabo v. Dennis Techs, LLC* 2007 U.S. Dist. LEXIS 47764,

    2007 WL 1958591 (S,D. Ill. July 2, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Skinner v. Warner-Lambert, Co*. Case No., CV 03-1643-R (RZX),

    2003 WL 25598915 (C.D. Cal. Apr. 28, 2003), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Torres v. Xomox Corp.*, 56 Cal. Rptr. 2d 455, 465 (Ct. App. 1996)). . . . . . . . . . . . . . . . . . . . 6

*Wolf v. Kennelly,* 540 F.Supp.2d 955, 959 (N.D. Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Wyeth v. Levine* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. INTRODUCTION

The above-referenced case originated as a state tort action in San Francisco, California, on behalf of multiple plaintiffs joined in a single action against the manufacturers of the prescription hormonal contraceptive, NuvaRing®, for injuries suffered as a result of the use of the product. Defendants removed this action to the Northern District of California on May 9, 2013. Defendant's Organon USA Inc., Organon Pharmaceuticals USA Inc., LLC, Organon International Inc., and Merck & Co., Inc. (collectively "Merck"), inappropriately removed the case on the basis of diversity jurisdiction, despite the presence of a California-based Defendant. Merck claims that McKesson Corporation ("McKesson"), the California-based Defendant, was "fraudulently joined" and alternatively, that one of the Plaintiffs, a Delaware resident, was "fraudulently misjoined."

As it is articulated in Plaintiffs' Motion to Remand, these exact theories have been rejected repeatedly by the Northern District and other Federal Courts. In fact, just over one year ago, before this District Court, Merck unsuccessfully tried to remove a case on identical grounds but the Court found that subject matter jurisdiction was lacking and remanded the cases to the Superior Court of San Francisco. *See Marble v. Organon USA, Inc.,* No. C 12-02213 WHA, 2012 WL 2237271 (N.D. Cal. June 15, 2012) (*See* Exhibit 1 to Declaration of Marissa C. Langhoff in Support of Plaintiffs' Reply to Opposition to Remand ("Langhoff Declaration")). The Southern District of California also rejected Merck's arguments in another case involving identical facts. See *Canales v. Organon USA, Inc.*, Case No. 13-00078 JM(BLM)(S.D. Calif. March 11, 2013) (Exhibit 2 to Langhoff Declaration).

Plaintiff's Complaint outlines, in great detail, the nature of the case and the claims against both Defendants Merck and McKesson. *See* Complaint (Exhibit 3 to Langhoff Declaration). Contrary to Merck's claims, the Complaint references facts and claims related to both Merck and McKesson. *Id*. As allowed under applicable pleading rules, Plaintiffs named McKesson for its role as distributor and marketer of NuvaRing, with Merck named as a result of its role as manufacturer of Nuvaring. See Complaint ¶¶27-39. As alleged in the Complaint, Defendants were made aware of the dangers associated with NuvaRing, but continued to manufacturer, distribute, and market the drug despite these known dangers. Complaint ¶¶1-8, 40-71. The complaint then details twelve (12) causes of actions against both Merck and McKesson.

Put succinctly, because Merck cannot and did not show that McKesson was fraudulently joined, Merck cannot successfully remove these cases on the grounds of diversity of jurisdiction. Merck also cannot show that the Delaware Plaintiff was fraudulently misjoined, further demonstrating a lack of diversity jurisdiction. Accordingly, Plaintiffs respectfully request that this Court immediately remand this action to the San Francisco Superior Court, where it was properly filed.

## II. REPLY ARGUMENT

As discussed in *Doe v. Allied –Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993), "[c]ourts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." There is a strong presumption in favor of remand, whereby "the burden is on the party seeking to preserve removal to establish the existence of federal subject matter jurisdiction." *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1126 (E.D. Cal. 2004). When there are any doubts over jurisdiction, those uncertainties are resolved in favor of remand to the state court. *Wolf v. Kennelly,* 540 F.Supp.2d 955, 959 (N.D. Ill. 2008).

### A. Plaintiffs' Remand Motion Should Not Be Deferred

Plaintiffs' respectfully refer the Court to Plaintiffs' opposition to Defendants' Motion to Stay for complete argument on this issue. As discussed therein, Plaintiffs submit that staying this case would impede the efficient administration of this action. Should no valid basis for federal jurisdiction be found to exist, and this matter remanded, this case would not belong in MDL 1964, and a stay would be a waste of judicial resources and time. Defendants' will not be prejudiced if the remand is decided by this Court. In fact, allowing the parties the motion process to fully run its course in this Court would conserve judicial resources and foster expeditious administration of justice.

In support of staying the action, Merck points out that Courts in this district, as well as in other California District Courts, have granted stays in identical NuvaRing actions naming McKesson. (*See* Defendant's Opposition to Plaintiffs' Motion to Remand ("Def. Opp.") at 1)). Merck further points out that the Judicial Panel on Multidistrict Litigation ("JPML" or the "Panel") recently ordered some of these matters transferred to MDL 1964. *Id*. at 2. What Merck fails to highlight, however, is that in two NuvaRing actions where the merits of remand have been decided, the respective Courts rejected

Merck's claims and remanded the cases to state court. See *Marble v. Organon USA Inc.,* 2012 WL 2237271; *Canales v. Organon USA, Inc*., Case No. 13-00078 JM(BLM)(S.D. Calif. March 11, 2013). The fact that Courts have granted stays in other NuvaRing-related matters should not by itself dissuade this Court from considering the merits of the present Motion to Remand. This is especially true here, where it is evident that when the merits of Motions to Remand in those NuvaRing matters are actually decided, they will be in favor of remand. Thus, to defer ruling on Remand and allow this case to go through the prolonged process of a transfer to the MDL is an unnecessary delay of justice. Accordingly, Defendants' Motion to Stay and their subsequent request for a stay herein should be denied.

### B. Defendants Removal Was Procedurally Improper

In its Opposition, Merck reasserts the same arguments set forth in its Removal and again contends that removal of this action to Federal Court was procedurally proper. As Plaintiffs set forth in their remand papers, Merck improperly removed this action from State Court. Merck did not obtain the consent of Defendant McKesson, although McKesson was a properly joined and served party. Merck contends that since McKesson was a "fraudulently joined" party it need not consent to removal of the action. This mere conclusory statement, however, fails to consider that McKesson has been found to be a properly joined party under similar circumstances on numerous occasions, including two other NuvaRing related actions. See *Marble v. Organon*, 2012 WL 2237271 (N.D. Cal. June 15, 2012); *Canales v. Organon USA, Inc*., Case No. 13-00078 JM(BLM)(S.D. Calif. March 11, 2013). The fact that Merck has unilaterally concluded that McKesson need not consent to removal does not make it so. Rather, based on the foregoing and the arguments already asserted in the remand papers, this Court should find Merck's removal improper, and remand the action to State Court.

### C. Defendant McKesson was not Fraudulently joined

Perhaps more important than the improper removal procedure Merck has effected here is the fact that Merck's removal relies entirely on the unsupported claim that Defendant McKesson is a "fraudulently joined" party. As explained by Plaintiffs' moving papers, a non-diverse defendant is fraudulently joined, and their citizenship ignored for purposes of determining the propriety of removal, only where a complaint "fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc*., 236 F.3d 1061,

1067 (9th Cir. 2001). Federal courts in California have held that there is a strong presumption against fraudulent joinder and that it is the defendants who carry the heavy burden of persuasion that such fraudulent joinder has occurred. *Plute v. Roadway Package System, Inc.,* 141 F.Supp.2d 1005, 1008 (N.D. Cal. 2001); *Martin v. Merck & Company, Inc*. 2005 WL 1984483 (E.D. Cal. 2005).

Merck claims that McKesson was "fraudulently joined" on the basis of four separate grounds: (1) Plaintiffs allege facts that do not provide an adequate basis for liability against McKesson; (2) Plaintiffs allege claims against McKesson that cannot be reconciled with the gravamen of the complaint; (3) Plaintiffs assert improper strict liability, failure-to-warn allegations; and (4) Any claims against McKesson are preempted under *Mensing*. All of these arguments are wholly without merit, and Merck has fallen far short of the substantial burden required to have a defendant considered fraudulently joined. Furthermore, Merck completely disregards the Northern District's Ruling in *Marble* and the Southern District's ruling in *Canales* where these issues have already been raised and decided, *Marble v. Organon*, 2012 WL 2237271 (N.D. Cal. June 15, 2012); *Canales v. Organon USA, Inc*., Case No. 13-00078 JM(BLM)(S.D. Calif. March 11, 2013).

*i. Plaintiffs Allege Sufficient Facts Against McKesson to Provide an Adequate Basis for McKesson's Alleged Liability*

Merck also argues that the Complaint filed by the Plaintiffs does not state a cognizable cause of action against McKesson in the State of California. Specifically, Merck claims that McKesson was fraudulently joined because the Complaint fails to allege specific facts showing a connection between McKesson and the Plaintiffs' alleged injuries.

Such an assertion is false. Under California law, a complaint must contain a "statement of facts constituting the cause of action, in ordinary and concise language." Cal. Code Civ. P. § 425.10(a)(1); *see Andrews v. Bayer Corp*., 2010 WL 234808, at *4 (C.D. Cal. 2010). In particular, this only requires "general allegations of ultimate fact," wherein plaintiffs "need not plead evidentiary facts supporting the allegation of ultimate fact." *Andrews,* 2010 WL 234808, at *4. A pleading is deemed adequate if "it apprises the defendant of the factual basis for the plaintiff's claim." *Id.* at *4 (*quoting McKell v. Washington Mut., Inc*., 49 Cal. Rptr. 3d 227, 238 (Ct. App. 2006)). In order to succeed on a strict liability cause of action, plaintiffs must "establish that the defendant's failure to warn 'was a legal cause

4                             Case No. 13-cv-02138 (SC)
PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND CASE TO STATE COURT

of the injury." *Id*. at *4 *(quoting Torres v. Xomox Corp*., 56 Cal. Rptr. 2d 455, 465 (Ct. App. 1996))*.

California Courts have opined on this precise issue. In *Andrews v. Bayer Corp*., the Court held that "Plaintiff's allegations that McKesson supplied Yasmin [the subject pharmaceutical] to pharmacies in California and that it had a supply agreement with Plaintiff's health care provider" were adequate in apprising the defendants of the factual basis for plaintiff's claim. *Id.* at *4 (*quoting McKell v. Washington Mut., Inc*., 49 Cal. Rptr. 3d 227, 238 (Ct. App. 2006)). Thus, the Court found that the Plaintiff "properly alleged a viable cause of action against McKesson," and accordingly, held that the other defendants did not carry their burden of establishing a fraudulent joinder of McKesson"

Similarly, here, Plaintiffs' Complaint alleges that NuvaRing® was "marketed, sold, and distributed" by Defendant McKesson and that Plaintiffs' injuries and damages were "a direct and proximate result of the Defendants' negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of NuvaRing®." *See* Complaint at ¶¶ 1-8; ¶¶ 40-71, Exhibit 3 to Langhoff Declaration. The Complaint further alleges that the "NuvaRing® manufactured and supplied by Defendants was defective and unsafe" and that such use by Plaintiffs caused serious injuries and/or death. *Id*. Plaintiffs also allege that "Defendant McKesson distributed NuvaRing® to the consuming public, including the NuvaRing Plaintiffs" and that "Defendant McKesson has distributed, marketed, advertised and provided discount coupons to the consuming public, including the NuvaRing® Plaintiffs." *Id.*

It should also be noted that the same claims Merck brings here have already been rejected by two California District Courts, including the Northern District. *See Marble v. Organon*, 2012 WL 2237271 (N.D. Cal. June 15, 2012); *Canales v. Organon USA, Inc*., Case No. 13-00078 JM(BLM)(S.D. Calif. March 11, 2013). Merck suggests that Plaintiffs' reliance on *Marble* is misplaced. Specifically, Merck claims that the reason Judge Alsup denied Merck's Motion to Stay and granted remand, was because "no other plaintiff has ever named McKesson Corporation in a NuvaRing action." (Def. Opp. at 12, 13). This, however, is a complete misinterpretation and misapplication of Judge Alsup's ruling in *Marble*. While the Court noted that McKesson had not been named in other NuvaRing actions, this was clearly a factor the Court considered with respect to the Motion to Stay being decided in the same Order, and in fact had no significance in the Court's decision to remand. *Marbl*e at *3.

Merck claims that the *Canales* decision by the Southern District (which also granted remand in a NuvaRing-related action) is an "outlier" in this litigation and should not be followed. (Def. Opp. at 13). In support of this claim, Merck points out that *Canales* is the only case remanded out of twenty NuvaRing actions filed since the *Marble* order. *Id.* What Merck fails to mention, however, is that numerous remand motions are still pending, and have yet to be decided in the remainder of those cases. Interestingly, the only reason the merits of those remands have not been reached is due to the fact that Merck sought an immediate stay and transfer of those cases after removing them to Federal Court. Merck attempts to skew the statistics of the pending cases rather than acknowledge the simple fact that each time remand has been decided in a NuvaRing action naming McKesson, the Court has granted remand. *Marble v. Organon*, 2012 WL 2237271 (N.D. Cal. June 15, 2012); *Canales v. Organon USA, Inc.*, Case No. 13-00078 JM(BLM)(S.D. Calif. March 11, 2013).[1]

Merck's final attempt to distract the Court from this well-settled area of law is to claim that the result in *Canales* reinforces the need for judicial economy and consistent results, and thus warrants transfer of all cases to the MDL. (Def. Opp. at 13). However, the opposite is true. Both times that Motions to Remand have been considered, with identical issues to the case at hand, courts have rejected Merck's arguments and granted remand. *Marble v. Organon*, 2012 WL 2237271 (N.D. Cal. June 15, 2012); *Canales v. Organon USA, Inc.*, Case No. 13-00078 JM(BLM)(S.D. Calif. March 11, 2013). There are absolutely no decisions to the contrary in any NuvaRing matter pending in this District, the other Districts of this State, MDL-1964 or in those cases currently pending transfer to MDL-1964. Nor can Merck point to any such decisions. Rather, the Orders in *Marble* and *Canales* are consistent with one another, as well as with the law, and it can be expected that any other Court considering these same remand issues will find similarly.

Despite Merck's contention, it is clear that there are sufficient allegations that McKesson distributed NuvaRing® to the Plaintiffs in this action. Thus, Plaintiffs have properly alleged a viable cause of action against McKesson by sufficiently apprising the defendants "of the factual basis for the plaintiff's claim." *Id.* at *4 (*quoting McKell v. Washington Mut., Inc.*, 49 Cal. Rptr. 3d 227, 238 (Ct.

---

[1] The JCCP also saw fit to consolidate all the currently pending California cases into a single litigation, *NuvaRing Product Cases II.*

App. 2006)). Accordingly, Merck has not carried their burden of establishing that the joinder of McKesson was fraudulent.

### ii. Plaintiffs' Claims Against McKesson Are Proper and Consistent with Their Claims Against the Merck Defendants

Merck further argues that McKesson is fraudulently joined by claiming that the Plaintiffs' allegations against McKesson are inconsistent with other claims in the Complaint. Merck contends that the allegations in the Complaint refer to claims against the Merck defendants only misleading the Plaintiffs, public and healthcare community regarding the safety of NuvaRing®, and that it is therefore inconsistent to attempt to hold McKesson liable for the same. Merck's argument is entirely misguided.

To support its claim of fraudulent joinder, Merck relies on a series of inapposite cases where courts concluded that in-state defendants were fraudulently joined since it was clear that claims against the in-state defendants were inconsistent with the other claims in the case. Merck inappropriately relies on these cases, however, as each dealt with in-state defendants that were physicians and pharmacies, as opposed to pharmaceutical distributors. *See Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 762-63 (S.D. W.Va. 2003) (holding that claims were irreconcilable where a plaintiff repeatedly alleged that the manufacturer concealed and misrepresented facts regarding the drug, and also asserted that the doctor knew or should have known the truth in spite of the manufacturer's misrepresentations); *In re PPA*, MDL No. 1407, 2002 WL 34418423, at *3 (W.D. Wash. Nov. 27, 2002 (finding a pharmacy defendant was fraudulently joined where the allegations that "manufacturer defendants concealed material facts regarding PPA through product packaging, labeling, advertising, promotional campaigns and materials, and other methods…directly undermines and contradicts the idea that 'the resident retail defendant] had knowledge or reason to know of the alleged defects"); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp.2d at 290 (finding resident retail pharmacies facing failure to warn claims were fraudulently joined where "the theory underlying the complaint [was] that the manufacturer defendants hid the dangers of Rezulin from plaintiffs, the public, physicians, distributors and pharmacists – indeed from everyone"); *In re Baycol Prods. Litig.*, No. MDL 1431 (MJD), 02-4835, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) (finding that a physician was fraudulently joined when allegations that he knew or should have known of Baycol's risks were inconsistent with the allegations that the manufacturer concealed

information); *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348,. Case No. 02-Civ. 3583, 2003, Dist. LEXIS 28, at *1-*2 (S.D.N.Y. Jan. 6, 2003) (finding fraudulent joinder where failure to warn claims against a physician were premised on knowledge allegedly withheld); *Louis v. Wyeth-Ayerst Pharm., Inc.*, No 5:00 CV102LN, 2000 U.S. Dist. LEXIS 22694, at 6* (S.D. Miss. Sep. 25, 2000)(finding allegations of "manufacturer's intentional concealment of the true risks of the drug(s), coupled with dissemination through various media of false and misleading information of the safety of the drug(s) at issue, belies any suggestion of knowledge, or reason to know by [the] resident defendants."

All of the above cases are distinguishable from the instant matter. Tellingly, Merck does not cite to a single precedent where the Court found claims against a pharmaceutical manufacturer and pharmaceutical distributor to be irreconcilable and that is for the simple fact that these claims are not inconsistent. In fact, as will be set forth in more details below, it is well settled law in California that strict liability for failure to warn run to distributors, as well as manufacturers. *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal.3d 987, 810 P.2d 549, 552 (Cal. 1991).

### iii. Plaintiffs' Claims Against McKesson Are Sufficient Under California Law

Merck further argues that McKesson is fraudulently joined on the ground that under California law, distributors of prescription drug products have no duty to warn. This argument, however, is also incorrect. Merck relies on only one case that has a similar factual pattern, *Skinner v. Warner-Lambert, Co*. Case No., CV 03-1643-R (RZX), 2003 WL 25598915 (C.D. Cal. Apr. 28, 2003), where the Court held that there was no possibility plaintiffs could prove a cause of action against McKesson. *Skinner,* an unreported decision, did not articulate the underlying facts, and merely concluded that a distributor of a prescription drug could not be held liable on a theory of strict liability. *Id.* On the other hand, the majority of courts in this state have reached the opposite conclusion and found that distributors, such as McKesson, are subject to claims under strict liability.

Indeed, as the *Maness* Court summarized, virtually every court that has considered the precise legal issue now before this Court, and has concluded that California state law recognizes a products claim against a distributor, such as McKesson. *Maness v. Bayer Corp*. 2010 U.S. Dist. LEXIS 50076 at p. 4. The general rule in California is that both manufacturers and distributors are strictly liable for injuries caused by defective products. *Id*.; *see also Maher v. Novartis*, 2007 U.S. Dist. LEXIS 58984

(remand case commenced against pharmaceutical manufacturer and its distributor, McKesson). In granting the remand, the *Maher* Court noted the general rule in California – that distributors and other "participants in the chain of distribution" are strictly liable for defective products. The Court also noted that at least 11 other courts have remanded actions in which McKesson was named as a defendant under California law. Accordingly, Plaintiffs claims are sufficient under California law.

> iv. Merck Has Failed to Show that Plaintiffs' Claims Against McKesson Are Preempted

Merck incorrectly argues that the causes of action pled against McKesson are preempted by the Supreme Court decision in *Pliva v. Mensing*, which concluded that the preemption doctrine bars state failure-to-warn claims applies to manufacturers of generic prescription drugs. *Pliva, Inc. v. Mensing*, 131 S. Ct. 2567, 2573 (2011). It should be noted at the outset that this argument is entirely inappropriate in an opposition to remand. Whether or not FDA regulations may preclude certain claims against the Defendants from ultimately prevailing, it is not an issue that this Court need decide in the context of a request for remand to state court. Argument as to whether Plaintiffs' claims will succeed or fail is an inquiry for a Motion for Summary Judgment, and not one to be determined in a motion for remand.

Regardless, Merck's arguments are not convincing. Merck relies heavily on *In re Fosamax Prods. Liab. Litig.*, MDL No. 2243, 2012 WL 181411, *3-4 (D.N.J. Jan. 17, 2012) where it was held that Plaintiffs' claims against a distributor were preempted. However, this case dealt solely with failure-to-warn claims against the distributors and is not on point with the case at hand. *Id.* Furthermore, that case came before the Court on a Motion for Judgment on the Pleadings, which is entirely different and not analogous to issues decided in a Motion to Remand. *Id.* As detailed above, it is already well established that there are viable claims against distributors of pharmaceutical products, specifically on a theory of strict liability. Defendants incorrectly assert that the Plaintiffs have not cited to any cases holding a pharmaceutical distributor, like McKesson, liable for distributing a drug with an FDA-approved label. Both *Maness* and *Maher*, on which Plaintiffs rely, held that a distributor of a pharmaceutical product could be held liable on a theory of strict liability. *Maness*, 2010 U.S. Dist. LEXIS 50076 at *4; *Maher,* 2007 U.S. Dist. LEXIS 58984. Further, Merck attempts to downplay *In Re Yasmin and Yas (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* where the Court held that there were viable claims against McKesson Corporation in a case involving a

Case3:13-cv-02138-SC Document22 Filed06/18/13 Page14 of 19

pharmaceutical drug. *In re Yasmin & YAZ (Drospirenone) Mktg, Sales Practices and Products Liability Litig*. 779 F. Supp. 2d 846 (S.D. Ill. 20s10). This case is on point with the case at hand, where there are allegations against McKesson Corporation for its role as a distributor and marker of a pharmaceutical product.

Merck falsely suggests that because pharmaceutical distributors are unable to lawfully change warnings accompanying prescription drugs, it is impossible under Federal law for distributors to comply with state requirements. However, that is not the case here. McKesson is not being sued only for a failure to warn. *See Halperin v. Merck, Sharpe & Dohme Corp. and H.D. Smith Wholesale Drug Co.,* 2012 WL 1204728, at *3 (N.D. Ill. April 10, 2012). Instead, the claims against McKesson here include several other claims, including those of strict liability in design. Thus, there is no conflict between state and federal law that arises, as there was in *Mensing*. *Halperin v. Merck, Sharpe & Dohme Corp. and H.D. Smith Wholesale Drug Co.,* 2012 WL 1204728, at *3 (N.D. Ill. April 10, 2012). This is because strict liability focuses on the product, rather than the knowledge of the defendant, and thus, the inability of a defendant to know of or prevent a risk is irrelevant, because fault is not an issue. *Id*. at *3.

Indeed, Merck's arguments regarding manufacturer "preemption" have been sternly rejected by other federal courts. In *Halperin,* the Northern District of Illinois assessed the argument of preemption that Merck raises here-specifically, whether or not *Mensing* preemption applies to pharmaceutical manufacturers and distributors. The Court addressed whether "federal law preempted state tort failure to warn claims brought against generic drug manufacturers" in a context virtually identical to the facts of the instant matter. *Halperin,* 2012 WL 1204728, at *3 (citing *Mensing*, 131 S. Ct. at 2577). Ultimately, the *Halperin* Court held that the "impossibility" reasoning of *Mensing* does not apply with equal force to strict liability design cases, since (1) strict liability based on design defect applies to all entities in the stream of commerce, including manufacturers/distributors, and (2) the *Mensing* opinion did not "directly address strict liability design defect claims" and therefore, did not preempt them. *Id.* So it is here. Plaintiffs' Complaint plainly includes a state law strict liability claim based on defective design against McKesson, as well as Merck. *See* Complaint ¶65-80. Therefore, Merck's arguments that Mensing applies to McKesson ignores the governing principles of strict liability. *Halperin*, 2012 WL 1204728, at *3.

10 Case No. 13-cv-02138 (SC)
PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND CASE TO STATE COURT

Perhaps even more persuasive is that California, like Illinois, "has long adhered to a doctrine of strict product liability that holds a manufacturer 'strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being [,]'" and, as a general rule, has held that such liability runs to the distributors as well as the manufacturers. *See In re: Avandia Sales Practices and Products Liability Litigation*, 624 F. Supp. 2d 396, 418-419 (E.D. Pa. 2009)(citing *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 994-95, (Cal.1991)); see also *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 62 (Cal. 1963) (holding manufacturer strictly liable); *Andrews v. Bayer Corporation,* 2010 WL 234808, at *3 (C.D. Cali. Jan. 12, 2010) (holding "[t]he general rule in California is that strict liability for failure to warn runs to distributors as well as manufacturers.") Indeed, it is even "a well-settled principle of California law that manufacturers of prescription drugs are strictly liable for a failure to warn." *Andrews,* 2010 WL 234808, at *3 (citing *Carlin v. Superior Court*, 13 Cal. 4th 1104 (Cal.1996)).

Accordingly, Plaintiffs' strict liability claims against McKesson do not implicate any impossibility between a state and federal duty, as was at issue in *Mensing*. Instead, the strict liability claims here are based on a design defect that generally applies to distributors as well as manufactures, as per California law. *Halperin,* 2012 WL 1204728, at *3.

In addition, even taking into account the failure-to-warn cause of action, it does not change the conclusion that McKesson should not be considered as fraudulently joined in this case. In *Mensing*, the Supreme Court articulated that "impossibility" exists for generic manufacturers in adhering to state-law duty to attach a safer label, where the federal requirement prevents these generic manufacturers from independently changing a label without the corresponding brand-name label being changed as well. *Mensing,* 131 S. Ct. at 2570. Thus, it becomes "impossible" for generic manufacturers to comply with both state and federal law, wherein, for these generic manufacturers, state law is preempted by federal law. *Id.*

The *Mensing* decision, which made a determination only for generic manufacturers – did not consider facts analogous to this matter. Indeed, the Supreme Court's ruling in *Wyeth v. Levine*, which rejected the same impossibility arguments raised by defendants here in terms of a brand-name manufacturer is far closer to the facts of the instant matter. *Id*. at 2571. In particular, the Supreme Court

emphasized that it did not intend to "distort the Supremacy Clause in order to create similar pre-emption across dissimilar statutory scheme." *Id*. The Supreme Court held steadfast to its decision in *Wyeth* and reiterated in its decision in *Mensing* that a state tort claim against a brand-name manufacturer for "failure to provide an adequate warning label was not pre-empted" due to the fact that it is possible for a manufacturer to comply with state and federal law. *Id*. Put simply, the Supreme Court has rejected the "impossibility" arguments raised by the Defendants here when a brand-name manufacturer is involved. This matter includes a brand name manufacturer and distributor and not a generic manufacturer. Accordingly*, Mensing* has no application here.

Moreover, in *Mensing,* the Supreme Court held that "Dear Doctor" letters qualify as "labeling" such that these letters must be "consistent with and not contrary to [the drug's] approved…labeling." Id at 2576, quoting 21 CFR §201.100(d)(1). Therefore, if generic manufacturers send out these letters, but the brand-name manufacturer does not, there would be an inaccurate implication that there is a "therapeutic difference" between the brand-name and generic drugs and this could be viewed as impermissibly 'misleading'". *Id*., citing U.S. Brief 19. However, by no means does the *Mensing* decision prevent brand-name manufacturers and distributors from advertising additional warnings and/or issuing letters to healthcare professionals. The federal regulations guiding generic manufacturers, which demand that "generic drug labels be the same at all times as the corresponding brand-name labels," do not extend to or interfere with a brand-name distributor's ability to adhere to state law duties along with their federal law duties, and the Supreme Court makes it very clear that it never intended for the *Mensing* decision to do so.

Most relevant to the instant matter, is that Merck's arguments failed on this very issue in both the *Marble* and *Canales* cases. *See Marble v. Organon*, 2012 WL 2237271 *6; *Canales v. Organon USA, Inc*., Case No. 13-00078 JM(BLM)(S.D. Calif. March 11, 2013) at 6,7. Despite the arguments offered by Merck, the Court simply cannot rule that there is "absolutely no possibility" that Plaintiffs could prevail on the strict liability claim, or other claims against McKesson. See *Plute,* 141 F. Supp. 2d at 1008, 1012; *Cavallini v. State Farm Mut. Auto Ins.* Co., 44 F.3d 256, 259 (5th Cir. 1995). As such, McKesson is not fraudulently joined in this case.

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND CASE TO STATE COURT

### D. The Delaware Plaintiff Was Properly Joined and Defendants' Request to Sever Should Be Denied And All Claims Remanded Back to State Court Together

Merck reiterates the same arguments set forth in its removal papers in stating that the New Jersey Plaintiff has been misjoined and thus those claims should be severed from the other Plaintiff. For reasons already stated in Plaintiffs' remand papers and for the reason set forth below, Defendants request to sever should be denied.

It should first be noted that courts have repeatedly declined to expand federal jurisdiction to procedural issues such as that in which Merck seeks to have this Court become involved and expand. *See Sabo v. Dennis Techs, LLC* 2007 U.S. Dist. LEXIS 47764, 2007 WL 1958591 (S,D. Ill. July 2, 2007) (rejecting doctrine of procedural misjoinder); *Bird v. Carteret Mortgage Corp.*, 2007 U.S. Dist. LEXIS 471 (S.D. Ohio Jan. 5, 2007) (rejecting doctrine and noting that it is inconsistent with "narrow construction" that must be applied to removal efforts). In this Circuit, Judge Carlton in *Osborne v. Metro.Life Ins. Co.*, 341 F.Supp.2d 1123, 1128 (E.D. Cal. 2004) specifically declined to adopt the doctrine and even pointed out "the last thing the federal courts need is more procedural complexity". See also 14B Charles Allen Wright, Arthur R. Miller and Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3723 at p. 658 (noting in essence that the best approach is to have severance issues addressed in state court). Accordingly, the so-called Plaintiff procedural misjoinder argument should be rejected by this Court at the outset.

Even if the Court were to apply the fraudulent misjoinder doctrine to the case at hand, Merck has failed to demonstrate that the Plaintiffs in the instant case have been misjoined. Merck avers that the only allegation in common to these NuvaRing® user Plaintiffs ("NuvaRing® Plaintiffs"), is that they both used the NuvaRing® product. This, however, is not an accurate characterization of the facts of this case as there is a much stronger nexus among these plaintiffs.

In support of its claim, Merck cites to *Cleo Flauta v. Johnson & Johnson, Case* No. CV 12-9095 PSG, slip op., at 5 (C.D. Cal. Jan. 10, 2013), where the court found misjoinder when 940 plaintiffs from 43 states brought claims against the manufacturers of the prescription antibiotic Levaquin for various tendon injuries they suffered. In that case, the Court considered the fact that there were a variety of different injuries alleged, the plaintiffs were prescribed the drug by different

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND CASE TO STATE COURT

physicians in different states, and that the received the drug presumably for different purposes with different dosages and lengths of exposure. *Id.* This is clearly distinguishable from the case at hand, where the NuvaRing, a form of birth control, is prescribed for the same purpose; it comes in only one dosage; and due to the very nature and purpose of the ring, it can be presumed that exposure time and duration is similar for each individual.

*In re Fosamax Prods. Liab. Litig.,* 2012 WL 1118780 (D.N.J. April 3, 2012) on which Merck relies lends no further support towards a finding of misjoinder. In that case, there were 91 Plaintiffs and each had alleged they purchased Fosamax "and/or" the generic alternative and named the parties as "Merck and/or…Generic Defendants," without affirmatively identifying the specific manufacturer(s) against whom they brought actions. *Id*. at *4. The Plaintiffs there also broadly alleged a "long bone fracture" rather than specifying the exact type of fracture. *Id*. It is for all these reasons the Court concluded that the joinder was undertaken to thwart Defendants' statutory right of removal. *Id* at *5. In the present matter, however, there are only 9 NuvaRing Plaintiffs and each alleges they used the same exact product. Furthermore, the Plaintiffs clearly name the defendants in this case, which includes both the Merck and McKesson defendants, and Plaintiffs further identify the role of each defendant in this action. Complaint ¶¶24-39.

In sum there are only ten NuvaRing® Plaintiffs in the instant matter, and each alleges that they used the same drug, specifically, the NuvaRing® vaginal ring. Given the nature of the product it can be assumed that each Plaintiff was exposed to the NuvaRing® in a similar fashion and for similar periods of time. Additionally, the NuvaRing® Plaintiffs allege to have suffered the same injuries. Specifically, each NuvaRing® Plaintiff alleges to have suffered injuries presenting as sequelae of improper clotting. Complaint ¶¶11-21. Based on the foregoing, it is clear that the NuvaRing® Plaintiffs share many common allegations, and as such, joinder in this matter is appropriate.

Merck avers that the Delaware Plaintiff was joined for the sole purposes of preventing removal of the action to federal court. This claim, however, is completely unfounded. As set forth above, McKesson is a properly joined party to this action, as is the California Plaintiff. Based on this fact alone there is no basis for diversity jurisdiction. Plaintiffs had every reason to believe that this case

would proceed in California Superior Court, with claims against McKesson, based on the Northern District's ruling in *Marble*. *See Marble v. Organon*, 2012 WL 2237271 (N.D. Cal. June 15, 2012). As such, joining the Delaware plaintiff would not alter the fact that there was already a lack of diversity among the parties. Accordingly, no egregious actions have been taken by joining these plaintiffs in the same action, and Merck's motion should be denied.

### III. CONCLUSION

For the reasons above and those stated in Plaintiffs' Motion to Remand to State Court, Plaintiffs respectfully request the Court grant Plaintiffs' Motions to Remand to State Court.

Dated this 18th day of June 2013        NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES LLP

                                                By:    /s/ Marissa C. Langhoff
                                                     Marissa C. Langhoff
                                                     mlanghoff@napolibern.com

                                                     Attorney for Plaintiffs